## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MAX GREGORY WARREN, | : |
| Plaintiff, | : |
| v. | : |
| CAMERON JIBRIL THOMAZ, p/k/a WIZ KHALIFA, ROSTRUM RECORDS, LLC, ATLANTIC RECORDING CORPORATION, WARNER MUSIC GROUP CORP., WEA INTERNATIONAL INC., MIKKEL STORLEER ERIKSEN, TOR ERIK HERMANSEN,  PGH SOUND, LLC, 45TH & 3RD MUSIC, LLC, WB MUSIC CORP., WARNER/CHAPPELL MUSIC, INC., EMI MUSIC PUBLISHING, SONY/ATV MUSIC PUBLISHING LLC, and STARGATE, | : : : : CIVIL ACTION NO. 11-cv-7924 : : : : : : |
| Defendants. | : : |

**DEFENDANTS, CAMERON JIBRIL THOMAZ, P/K/A WIZ KHALIFA'S, ROSTRUM RECORDS, LLC'S, ATLANTIC RECORDING CORPORATION'S WARNER MUSIC GROUP CORP.'S, WEA INTERNATIONAL INC.'S, 45TH & 3RD MUSIC, LLC'S, WB MUSIC CORP.'S, WARNER/CHAPPELL MUSIC, INC.'S AND EMI APRIL MUSIC INC.'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULES 8, 12(b)(2), 12(b)(6), AND 12(b)(7) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

OF COUNSEL:

Brad D. Rose, Esq. (*pro hac vice* pending)
Ilene S. Farkas, Esq. (*pro hac vice* pending)
PRYOR CASHMAN LLP
7 Times Square
New York, NY 10036-6569
Tel. (212) 421-4100
Fax. (212) 326-0806
brose@pryorcashman.com
ifarkas@pryorcashman.com

Hara K. Jacobs, Esq.
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Tel. (215) 665-8500
Fax. (215) 864-8999
jacobsh@ballardspahr.com

*Attorneys for Defendants, Cameron Jibril Thomaz, p/k/a Wiz Khalifa, Rostrum Records, LLC, Atlantic Recording Corporation, Warner Music Group Corp., WEA International Inc., 45th & 3rd Music, LLC, WB Music Corp., Warner/Chappell Music, Inc., and EMI April Music Inc.*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................... iii

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ........................................................................................ 4

    A. The Publishing Defendants ............................................................................ 4

        1. EMI ........................................................................................................ 4

        2. Warner/Chappell and WB Music Corp. ............................................... 5

    B. Defendants' Song ........................................................................................... 6

    C. Plaintiff's Complaint ...................................................................................... 7

    D. Plaintiff's Song and the Alleged "Similarities" To Defendants' Song ........... 8

ARGUMENT ........................................................................................................... 10

STANDARD OF REVIEW ...................................................................................... 10

I.    PLAINTIFF HAS FAILED TO ALLEGE THE
      REQUISITE ELEMENTS OF AN INFRINGEMENT CLAIM ..................... 12

    A. The Standard For Alleging Copyright Infringement Claims ...................... 12

    B. Plaintiff Has Not Alleged That Defendants Copied Protectable Elements of
       Plaintiff's Song Or That Defendants Had Access To Plaintiff's Song ........ 14

    C. Plaintiff Has Not Alleged that Defendants' Song Copies
       Any Protectable Expression In Plaintiff's Song and
       Thus Has Failed to (and Cannot) Allege Substantially Similarity ........... 15

        1. Plaintiff's Song's Title Is Not A Protectable Element of The Song ....... 15

        2. The Remaining Arguable "Similarities" Are Not Protectable ............... 16

           a. "N' Yellow" and the Use of "Cars" and "Diamonds" Are Not
             Sufficiently Original To Be A Protectable Element of Plaintiff's Song ... 16

           b. There are Many Other Musical Compositions
             Which Use the Phrase "[Color and] Yellow" ............................... 21

3.  The Songs Contain Numerous Differences .........................................................22

    a.  The Lyrics Are Different ..................................................................22

    b.  The Music Is Different...................................................................23

II.  THE PUBLISHING DEFENDANTS SHOULD BE DISMISSED
     FOR LACK OF PERSONAL JURISDICTION PURSUANT TO RULE 12(b)(2).......25

     A. Plaintiff Bears the Burden of Proof
        to Establish that Personal Jurisdiction Exists ..........................................25

        1.  The Publishing Defendants Have Not Maintained
            Sufficient Contacts with the Commonwealth of Pennsylvania
            to Satisfy the Constitutional Standard for Personal Jurisdiction ......................26

            a.  This Court Does Not Have
                General Jurisdiction Over the Publishing Defendants..................................27

            b.  This Court Does Not Have
                Specific Jurisdiction over the Publishing Defendants ..................................28

III. WITHOUT PERSONAL JURISDICTION OVER
     THE PUBLISHING COMPANIES, THE COURT MUST
     DISMISS THE COMPLAINT PURSUANT TO RULE 12(B)(7)................................33

CONCLUSION........................................................................................................36

## TABLE OF AUTHORITIES

__CASES__                                                                    __PAGE(s)__

*Acuff-Rose Music v. Jostens, Inc.*,
    155 F.3d 140 (2d Cir. 1998) ................................................21

*Alexander v. Murdoch*,
    10 Civ. 5613 (PAC) (JCF), 2011 U.S. Dist. LEXIS 79503
    (S.D.N.Y. July 14, 2011) ................................................11

*Alberto-Culver Co. v. Andrea Dumon, Inc.*,
    466 F.2d 705 (7th Cir. 1972) ................................................12

*American Electric Power Serv. Corp. v. EC&C Technologies, Inc.*,
    No. C-2-01-1021, 2002 U.S. Dist. LEXIS 21994 (S.D. Ohio July 26, 2002) ...............35

*Angst v. Royal Maccabees Life Insurance Co.*,
    77 F.3d 701 (3d Cir. Pa. 1996) ................................................34

*Arica Institute, Inc. v. Palmer*,
    970 F.2d 1067 (2d Cir. 1992) ................................................18

*Armour v. Knowles*,
    No. H-05-2407, 2006 U.S. Dist. LEXIS 67783 (S.D. Tex. Sept. 21, 2006),
    *aff'd*, 512 F.3d 147 (5th Cir. 2007).................................................21

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................10, 14

*Atari, Inc. v. North America Philips Consumer Electronics Corp.*,
    672 F.2d 607 (7th Cir. 1982) ................................................14

*BP Chemicals Ltd.v. Formosa Chem. & Fibre Corp.*,
    229 F.3d 254 (3d Cir. 2000) ................................................26, 27

*Beistle Co. v. Party City U.S.A., Inc.*,
    914 F. Supp. 92 (M.D. Pa. 1996)................................................26

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................2, 10, 14, 15

*Bell v. Blaze Magazine*,
    No. 99 Civ. 12342 (RCC), 2001 U.S. Dist. LEXIS 2783
    (S.D.N.Y. Mar. 16, 2001) ................................................12, 17

**CASES**                                                                                                      **PAGE(s)**

*Boone v. Jackson,*
    206 Fed. Appx. 30 (2d Cir. 2006)............................................................................21

*Bridgeport Music, Inc. v. Still N The Water Publishing,*
    327 F.3d 472 (6th Cir. 2003) ...................................................................*passim*

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985)..........................................................................................27

*Butts v. Hyde,*
    No. 11-4252, 2012 U.S. App. LEXIS 1860 (3d Cir. Jan. 31, 2012)...................10

*CMM Cable Rep, Inc. v. Ocean Coast Properties, Inc.,*
    97 F.3d 1504 (1st Cir. 1996)............................................................................18

*In re Chocolate Confectionary Antitrust Litigation,*
    641 F. Supp. 2d 367 (M.D. Pa. 2009)...............................................................27

*Clay v. Cameron,*
    No. 10-22203-CIV-JORDAN, 2011 U.S. Dist. LEXIS 153496
    (S.D. Fla. Oct. 20, 2011)..................................................................................14

*Coleman v. Dretke,*
    409 F.3d 665 (5th Cir. 2005) ..............................................................................9

*Cooper v. Digital Processing System, Inc.,*
    182 F.R.D. 242 (N.D. Ohio 1998), *aff'd*, 215 F.3d 1342 (Fed. Cir. 1999).......................35

*Currin v. Arista Records, Inc.,*
    724 F. Supp. 2d 286 (D. Conn. 2010), *aff'd*, 42 Fed. Appx. 21 (2d Cir. 2011) ..........16, 21

*D'Jamoos v. Pilatus Aircraft Ltd.,*
    566 F.3d 94 (3d Cir. 2009) ...........................................................................25, 28

*Damiano v. Sony Music Entertainment,*
    975 F. Supp. 623 (D.N.J. 1996)......................................................................13, 22

*Darden v. Peters,*
    488 F.3d 277 (4th Cir. 2007) ..........................................................................20

*Douglas v. Osteen,*
    560 F. Supp. 2d 362 (E.D. Pa. 2008), *aff'd*,
    317 Fed. Appx. 97 (3d Cir. 2009).....................................................................13

**CASES**                                                                      **PAGE(s)**

*Douglas v. Osteen,*
    317 Fed. Appx. 97 (3d Cir. 2009)..................................................................10, 12, 15, 17

*Douglas v. Wal-Mart Stores, Inc.,*
    No. 05-152 (ECR), 2005 U.S. Dist. LEXIS 30138 (E.D. Pa. Nov. 30, 2005),
    *aff'd,* 208 Fed. Appx. 943 (Fed. Cir. 2006) .........................................................17

*F & M Distributors, Inc. v. American Hardware Supply Co.,*
    129 F.R.D. 494 (W.D. Pa. 1990) .......................................................................34

*Gottwald v. Jones,*
    No. 11 Civ. 1432 (CM)(FM), 2011 U.S. Dist. LEXIS 103414
    (S.D.N.Y. Sept. 12, 2011)................................................................................24

*Harris v. Winfrey,*
    No. 10-5655, 2011 U.S. Dist. LEXIS 28869 (E.D. Pa. Mar. 18, 2011) ....................10, 15

*Hayes v. Koch Entm't,*
    G-06-515, 2008 U.S. Dist. LEXIS 33418 (S.D. Tex. Mar. 14, 2008) ..............................16

*Integral Nuclear Associates, LLC v. Nair,*
    No. 05-382, 2005 U.S. Dist. LEXIS 17528 (E.D. Pa. Aug. 19, 2005) .............................26

*Irizarry v. East Longitude Trading Co.,*
    296 F. Supp. 2d 862 (N.D. Ohio 2003) .............................................................32

*Jackson v. Booker,*
    No. 11-3400, 2012 U.S. App. LEXIS 3024 (3d Cir. Feb. 16, 2012) ................................13

*Johnson v. Gordon,*
    409 F.3d 12 (1st Cir. 2005)...............................................................................18

*Jumpp v. Jerkins,*
    No. 08-6268, 2010 U.S. Dist. LEXIS 68059 (D.N.J. July 7, 2010) ....................28, 30, 32

*Kimball v. Countrywide Merchant Services,*
    No. 04-3466, 2005 U.S. Dist. LEXIS1817 (E.D. Pa. Feb. 8, 2005) ...........................26, 27

*Kirkland v. National Broadcasting Co.,*
    425 F. Supp. 1111 (E.D.Pa.1976), *aff'd w'out op.,* 565 F.2d 152 (3d Cir.1977) .............15

*Koczkodon v. Grand Versailles, LLC,*
    No. 10-3284, 2010U.S. Dist. LEXIS 98547 (E.D. Pa. Sept. 17, 2010)............................26

**CASES**                                                                 **PAGE(s)**

*Lil' Joe Wein Music, Inc. v. Jackson*,
    245 Fed. Appx. 873 (11th Cir. 2007)..........................................................20, 22

*Live Face on Web, LLC v. Highview Travel, LLC*,
    No. 11-2497, 2012 U.S. Dist. LEXIS 8697 (E.D. Pa. Jan. 25, 2012)................................29

*Magic Marketing, Inc. v. Mailing Services of Pittsburgh, Inc.*,
    634 F. Supp. 769 (W.D. Pa. 1986)......................................................................18

*Marra v. Burgdorf Realtors, Inc.*,
    726 F. Supp. 1000 (E.D. Pa. 1989).....................................................................34

*Martinez v. McGraw*,
    No. 3:08-0738, 2009 U.S. Dist. LEXIS 69862 (M.D. Tenn. Aug. 10, 2009)..............14, 15

*Massachusetts School of Law at Andover, Inc. v. American Bar Association*,
    846 F. Supp. 374 (E.D. Pa. 1994).....................................................................25

*Maule v. Philadelphia Media Holdings, LLC*,
    No. 08-3357 (RFK), 2009 U.S. Dist. LEXIS 6795 (E.D. Pa. Jan. 30, 2009) ...................15

*Mellon Bank (East) PSFS, N.A. v. DiVeronica Brothers, Inc.*,
    983 F.2d 551 (3d Cir. 1993) ...........................................................................29

*Mellon Bank (East) PSFS, N.A. v. Farino*,
    960 F.2d 1217 (3d Cir. 1992) ..........................................................................25

*Nelson v. PRN Products, Inc.*,
    873 F.2d 1141 (8th Cir. 1989) .........................................................................11

*O'Brien v. Chappel & Co.*,
    159 F. Supp. 58 (D.N.Y. 1958).........................................................................17

*O'Toole v. Northrop Grumman Corp.*,
    499 F.3d 1218 (10th Cir. 2007) .........................................................................9

*Patterson v. FBI*,
    893 F.2d 595 (3d Cir. 1990) ...........................................................................26

*Penn Mutual Life Insurance Co. v. BNC Nat. Bank*,
    No. 10-00625, 2010 U.S. Dist. LEXIS 91362 (E.D. Pa. Sept. 2, 2010)...........................27

*Peter F. Gaito Architecture, LLC v. Simone Development Corp.*,
    602 F.3d 57 (2d Cir. 2010) ...........................................................................12

**CASES**                                                                    **PAGE(s)**

*Peters v. West,*
  776 F. Supp. 2d 742 (N.D. Ill. 2011) ....................................................................*passim*

*Phillips v. Murdock,*
  543 F. Supp. 2d 1219 (D. Haw. 2008) .................................................................11, 16, 21

*Prunte v. Universal Music Group, Inc.,*
  699 F. Supp. 2d 15 (D.D.C. 2010), *aff'd*, 425 Fed. Appx. 1 (D.C. Cir. 2011) ..........*passim*

*Pyatt v. Raymond,*
  10 Civ. 8764 (CM), 2011 U.S. Dist. LEXIS 55754 (S.D.N.Y. May 19, 2011),
  *aff'd*, 2012 U.S. App. LEXIS 2736 (2d Cir. Feb. 9, 2012) ..............................10, 15, 19, 20

*Regan v. Loewenstein,*
  No. 06-0579, 2007 U.S. Dist. LEXIS 48476 (E.D. Pa. July 3, 2007),
  *aff'd*, 292 Fed. Appx. 200 (3d Cir. 2008) ..........................................................29

*Renner v. Lanard Toys Ltd.,*
  33 F.3d 277 (3d Cir. 1994) ....................................................................30, 32

*Schaffer v. Clinton,*
  240 F.3d 878 (10th Cir. 2001) ....................................................................9

*Schiller-Pfeiffer, Inc. v. Country Home Products, Inc.,*
  No. 04-1444, 2004 U.S. Dist. LEXIS 24180 (E.D. Pa. Dec. 1, 2004) ..............................26

*Segal v. Paramount Pictures,*
  841 F. Supp. 146 (E.D. Pa. 1993) (Robreno, J.), *aff'd*, 37 F.3d 1488 (3d Cir. 1994) .......22

*Sieg v. Sears Roebuck & Co.,*
  --- F. Supp. 2d --, 2012 U.S. Dist. LEXIS 23888 (M.D. Pa. Feb. 24, 2012) ...................28

*Sinclair L.D. Johnson International, Inc. v. Faulkner Nissan Inc.,*
  2010 U.S. Dist. LEXIS 21422 (M.D. Pa. Mar. 9, 2010) ...................................18

*Sinclair L.D. Johnson International, Inc. v. Faulkner Nissan, Inc.,*
  No. 1:06-CV-2256, 2010 U.S. Dist. LEXIS 21384 (M.D. Pa. Jan. 27, 2010) ...................18

*Stafford Trading, Inc. v. Lovely,*
  No. 05 C 4868, 2007 U.S. Dist. LEXIS 37140 (N.D. Ill. May 21, 2007) ........................35

*Staggs v. West,*
  No. PJM 08-728,2009 U.S. Dist. LEXIS 72275 (D. Md. Aug. 14, 2009) ........................24

**CASES**                                                                                          **PAGE(s)**

*Steele v. Turner Broadcasting System,*
    646 F. Supp. 2d 185 (D. Mass. 2009) ........................................................17, 23

*Susan Wakeen Doll Co. v. Ashton-Drake Galleries,*
    272 F.3d 441 (7th Cir. 2001) ................................................................13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    550 U.S. 308 (2007)...........................................................................10

*Time Share Vacation Club v. Atlantic Resorts, Ltd.,*
    735 F.2d 61 (3d Cir. 1984) ..................................................................26

*TruePosition, Inc. v. LM Ericsson Telephone Co.,*
    No. 11-4574, --- F. Supp. 2d ---, 2012 U.S. Dist. LEXIS 1646
    (E.D. Pa. Jan. 6, 2012)........................................................................25

*Universal Athletic Sales Co. v. Salkeld,*
    511 F.2d 904 (3d Cir. 1975) ...........................................................13, 17

*Utilitech, Inc. v. Somerset Medical Ctr.,*
    No. 06-1232, 2006 U.S. Dist. LEXIS 40126 (E.D. Pa. June 15, 2006)............................29

*Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Products Co.,*
    75 F.3d 147 (3d Cir. 1996) ...........................................................25, 29, 30

*Whelan Associates, Inc. v. Jaslow Dental Laboratory, Inc.,*
    797 F.2d 1222 (3d Cir. 1986) .........................................................13, 14

*Wildlife Express Corp. v. Carol Wright Sales, Inc.,*
    18 F.3d 502 (7th Cir. 1994) ................................................................12

*Winstead v. Jackson,*
    No. 10-5783 (SRC), 2011 U.S. Dist. LEXIS 107560 (D.N.J. Sept. 20, 2011)......11, 13, 15

*World-Wide Volkswagen Corp. v. Woodson,*
    444 U.S. 286 (1980)...........................................................................26

*Zella v. E.W. Scripps Co.,*
    529 F. Supp. 2d 1124 (C.D. Cal. 2007) ...................................................11

**STATUTES**                                                    **PAGE(s)**

37 C.F.R. 202.1(a) ...................................................................................17, 20

Fed. R. Civ. P. 8 .....................................................................................1, 14, 35

Fed. R. Civ. P. 8(a)(2) ...............................................................................10

Fed. R. Civ. P. 12(b)(2) ............................................................................*passim*

Fed. R. Civ. P. 12(b)(6) ............................................................................*passim*

Fed. R. Civ. P. 12(b)(7) .............................................................................passim

Fed. R. Civ. P. 19 .......................................................................................33

Fed. R. Civ. P. 19(a) ..................................................................................34

Fed. R. Civ. P. 19(a)(1)(B)(i) .....................................................................34

Fed. R. Civ. P. 19(b) ..................................................................................34

FRE 201(b) .................................................................................................9

42 Pa. Cons. Stat. § 5322 (2004) ...............................................................25

17 U.S.C. § 102 (b) ....................................................................................16

17 U.S.C. § 107 ...........................................................................................7

17 U.S.C. §115 ............................................................................................6

**TREATISE**

2 Melville B. Nimmer and David Nimmer, *Nimmer on Copyright*, §8.04[B] ................................6

**OTHER**

http://www.pennlive.com/midstate/index.ssf/2009/01/black_and_gold_define_pittsbur.html
    (last visited June 7, 2012) ...........................................................................9

Wikipedia page for Pittsburgh Pennsylvania available at
    http://en.wikipedia.org/wiki/Pittsburgh#cite_note-92 (last visited June 8, 2012) ...............8

Defendants, Cameron Jibril Thomaz, p/k/a Wiz Khalifa, Rostrum Records, LLC, Atlantic Recording Corporation ("Atlantic"), Warner Music Group Corp., WEA International Inc., 45th & 3rd Music, LLC, WB Music Corp., Warner/Chappell Music, Inc. and EMI April Music Inc. (incorrectly sued herein as "EMI Music Publishing") (collectively "Defendants") respectfully submit this memorandum of law in support of their motion (i) to dismiss the complaint of Plaintiff Max Gregory Warren ("Plaintiff") for failure to state a claim under Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure; and, in the event the Court denies any portion of Defendants' 12(b)(6) motion, (ii) to dismiss EMI April Music Inc., WB Music Corp. and Warner/Chappell Music, Inc. (the "Publishing Defendants") for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2); and (iii) as a result, to dismiss the case for failure to join indispensable parties pursuant to Fed.R.Civ.P. 12(b)(7).

## PRELIMINARY STATEMENT

Plaintiff brought suit in December 2011 for copyright infringement and various preempted state law claims[1] based on his allegation that defendants copied Plaintiff's musical composition, entitled, *Pink N' Yellow* ("Plaintiff's Song") in Defendants' 2010 hit musical composition, entitled *Black and Yellow* ("Defendants' Song"). Defendants Khalifa, Tor Hermansen, and Mikkel Eriksen are the authors of Defendants' Song, which was recorded by Khalifa and released by Atlantic on the album entitled, *Rolling Papers* (the "Album"). Compl. ¶ 29.[2]

While Plaintiff fails to specify a single similarity between the two songs at issue, Plaintiff's infringement claim appears to be premised entirely upon the use of a few common and unprotectable words: (1) Defendants' use of the words "*and Yellow*" in the title and chorus of

---

[1] On May 31, 2012, Plaintiff voluntarily dismissed his five (5) state law claims. (Docket #17).

[2] As of the filing of this motion, defendants Hermansen and Eriksen have not been served.

their song "*Black and Yellow*,"and (2) the appearance in both rap songs of lyrics relating to "cars" and "diamonds" (albeit in different locations within each song).[3]  Plaintiff has failed to state a claim for infringement under well-established precedent and thus his complaint should be dismissed as a matter of law.

First, Plaintiff's Complaint fails to meet the most basic pleading standards under the Supreme Court's holding in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), as it alleges no facts whatsoever explaining how any of the Defendants had access to Plaintiff's Song and fails to allege any similarities between the songs, much less actionable ones.  Second, this Court can review the two songs and determine that there are no actionable similarities and that the songs are not substantially similar as a matter of law.  Titles are not copyrightable, and thus any similarity between Plaintiff's song's title, *Pink N' Yellow*, and Defendants' Song's title,*Black and Yellow* (which "similarity" appears to be the use of a color, a connector, and the word "yellow")does not constitute substantial similarity as a matter of law. The only remaining conceivable lyrical "similarities" are unprotectable words and short phrases:(a) the phrase "*[Color] N' Yellow*" in the chorus of Plaintiff's Song is too short to be protectable or otherwise "owned" by Plaintiff, not original to Plaintiff and expressed differently in each song; and (b) different uses of the words "car" and "diamonds" – which, like colors, cannot be monopolized by any user – and are hardly protectable or original to Plaintiff.

To the extent that Plaintiff intends to claim musical similarities between the two songs (which the complaint does not allege and as to which, as a matter of pleading, Defendants should not be left to guess about), the Court can hear for itself that there are no meaningful similarities between the music in the two songs.  The music of the two songs differsin structure, harmony

---

[3] Plaintiff's Complaint does not specify these "similarities" – or any other similarity.  These are the only "similarities" specified by Plaintiff's prior counsel in correspondence and the only "similarities" gleaned from a comparison of the songs.

and melody (in fact, Plaintiff's Song does not contain melody at all as the vocal parts are "rapped" and not sung). These are entirely different songs.

Plaintiff's Complaint identifies no protectable similarities because the songs have no protectable similarities. In order for a song to be substantially similar to another, Plaintiff must prove that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's *protectable expression* by taking material *of substance and value*. Here, Plaintiff has not alleged – and, based on a review of the songs at issue cannot allege – any protectable expression of substance and value from Plaintiff's Song that was copied in Defendants' Song. Accordingly, the Court should dismiss Plaintiff's complaint with prejudice.

In the event that Plaintiff's claims could survive dismissal, the Publishing Defendants should be dismissed because this Court lacks personal jurisdiction over them. Plaintiff has failed to allege any facts that would justify this Court's exercise of personal jurisdiction over the Publishing Defendants. The Publishing Defendants are all non-residents which do not maintain offices in the forum, transact or otherwise do business in the forum and thus there is no general jurisdiction over the Publishing Defendants. Moreover, specific jurisdiction cannot be found over the Publishing Defendants based merely on the fact that Defendants' Song was licensed to Atlantic (in New York), which permitted the use of Defendants' Song on the Album and the collection of royalties from Atlantic.

In fact, under circumstances virtually identical to those present here, the Court of Appeals for the Sixth Circuit dismissed a copyright infringement case against music publishers for lack of personal jurisdiction. *Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 477-478 (6th Cir. 2003). In *Bridgeport*, the non-resident music publisher defendants had merely granted a mechanical license which permitted a record company to manufacture and nationally distribute

a recording of the allegedly infringing musical composition.  Because, as in this case, the mechanical licenses merely *permitted* national exploitation, but in no way *required* exploitation in the forum state, the publisher defendants did not participate in any activity *purposefully directed* to the forum state with respect to Defendants' Song.  The *Bridgeport* decision is directly on point and dispositive of the Publishing Defendants' motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(2).[4]

Second, upon the dismissal of the Complaint against the Publishing Defendants, the Complaint must also be dismissed as against the remaining defendants, pursuant to Fed. R. Civ. P. 12(b)(7).  Due to their exclusive rights in and to the copyright in Defendants' Song, the Publishing Defendants are indispensable parties to this case, which seeks, *inter alia,* injunctive relief prohibiting the exploitation of the Publishing Defendants' intellectual property.  Thus, this case must be dismissed against the remaining defendants pursuant to Fed. R. Civ. P. 12(b)(7).

Defendants' motion should be granted in its entirety, and the Complaint dismissed.

## STATEMENT OF FACTS

### A.     The Publishing Defendants

#### 1.     EMI

Pursuant to certain exclusive songwriter/co-publishing agreements between EMI Music Publishing Ltd ("EMI UK") and non-served defendants Eriksen and Hermansen (the "Stargate Writers"), EMI UK owns a 50% interest in Defendants' Song.  (Declaration of Stephen Dallas ["Dallas Decl."] at ¶ 7).  EMI acts as the exclusive subpublisher for the Stargate Writers' share

---

[4] In fact, in the instant case, for most uses of Defendants' Song, the Publishing Defendants did not even affirmatively issue a mechanical license to Atlantic for use of the Defendants' Song.  Rather, the Publishing Defendants simply honored what is called a "controlled composition" in the writers' agreements with Atlantic, which Atlantic considered to be a grant of a mechanical license to the record company (Atlantic) for all songs recorded under the terms of these agreements that are written or co-written by the artists.  Thus, the facts here are even more attenuated than in *Bridgeport,* where no basis for jurisdiction over the publishers existed.

of Defendants' Song in the United States and therefore has the exclusive right to publish, license and administer that share of the Defendants' Song in the United States.

EMI is a corporation organized pursuant to the laws of the State of Connecticut, with its principal place of business located in New York, New York.  (Dallas Decl. at ¶2).  The Pennsylvania Secretary of State's records reflect that there are no records of EMI having registered to conduct business in Pennsylvania. (Dallas Decl., Ex. A).

EMI is not a resident of the State of Pennsylvania.  EMI does not maintain an office in Pennsylvania.  EMI does not transact or otherwise conduct business in Pennsylvania, nor is EMI authorized or registered to conduct business in Pennsylvania.   EMI does not advertise in Pennsylvania, or cause others to advertise on their behalf in Pennsylvania.  EMI has not entered into to an agreement to supply services or goods in Pennsylvania. (Dallas Decl. at ¶ 4).

## 2.    Warner/Chappell and WB Music Corp.

Pursuant to an exclusive songwriter/co-publishing agreement between WB Music Corp. ("WB Music") and Khalifa, WB Music co-owns the remaining 50% interest in Defendants' Song with Khalifa/PGH.  (Declaration of Nathan Osher ["Osher Decl."] at ¶ 7).

WB Music is a Delaware corporation and Warner/Chappell (collectively, the "Warner Publishers") is a California corporation, both of which have their principal places of business located in Los Angeles, California.  (Osher Decl. at ¶ 2). The Pennsylvania Secretary of State's records reflect that there are no records of WB Music or Warner/Chappell having registered to conduct business in Pennsylvania.  (Osher Decl., Ex. A).

**B.**     **Defendants' Song**

The Publishing Defendants are collectively the owners and/or exclusive U.S. administrators of the copyright in and to Defendants' Song.  In order for a record company to secure the right to manufacture and distribute recordings of a composition, it must obtain a mechanical license from the owners of the copyright in the composition.  The first recording of a composition requires the consent of the owners of the copyright in the composition.  Thereafter, anyone can mechanically reproduce a composition in recorded form by either securing a license from the owners directly (or through an agent such as The Harry Fox Agency) or by obtaining a "compulsory license" under the Copyright Act.[5]

With regard to Defendants' Song, the agreements between Atlantic and the song's writers (Khalifa and co-writers/producers Hermansen and Eriksen) contained what is called a "controlled composition clause," which Atlantic, the record company that released the Album, considered to be a grant of a mechanical license to it for all songs recorded under the terms of those agreements that are written or co-written by these artists.  (Dallas Decl., Exs. B, C; Osher Decl., Exs. B, C.)  In this case, Atlantic notified each of the Publishing Defendants (with respect to their respective 50% ownership and/or exclusive administration rights in and to Defendants' Song) that it was using Defendants' Song on the Album, pursuant to the license granted to it under the "controlled composition clause" in its agreements with these writers.   (Dallas Decl., Ex. C; Osher Decl., Ex. C).  As a result, there was actually no affirmative act of issuing any

---

[5] A mechanical compulsory license gives the licensee a non-exclusive right to record a nondramatic musical composition and reproduce that recording in phonorecord copies of the work.  See 2 Melville B. Nimmer and David Nimmer, *Nimmer on Copyright*, §8.04[B]; see also 17 U.S.C. §115 (West 1996).

license by the Publishing Defendants in this circumstance. The Publishing Defendants simply honored the controlled composition clause as a grant of rights to Atlantic.[6]

The mechanical licenses issued to Atlantic do not mention Pennsylvania, and do not place any affirmative obligation upon Atlantic to exploit Defendants' Song in Pennsylvania or anywhere else. (Osher Decl. at, ¶¶ 10-11, Exs. B-C; Dallas Decl. at ¶¶ 10-12, Exs. B-D). Rather, the licenses simply *permit* Atlantic to exploit the album containing Defendants' Song nationally; the Publishing Defendants have no control over where the album is marketed or sold. (*Id.*)

## C.   **Plaintiff's Complaint**

Plaintiff's complaint was filed in December 2011, and originally contained eight (8) claims. On May 14, 2012, Defendants' counsel wrote to Plaintiff's counsel and explained why each and every claim should be voluntarily dismissed as preempted under the Copyright Act (17 U.S.C. § 107) or because Plaintiff had otherwise failed to state a claim. On May 31, 2012, Plaintiff voluntarily dismissed his five (5) his claims that were based on state law, but refused to dismiss any other claim.

The only remaining claims in Plaintiff's complaint are:  (1) Count Two for copyright infringement for "failure to obtain a mechanical license"; (2) Count Three for copyright infringement; and (3) Count Eight for an "injunction." Essentially, Plaintiff's complaint boils down to a claim for copyright infringement based on the alleged use of Plaintiff's Song in Defendants' Song, and seeks damages and permanent injunctive relief. For the reasons stated herein, Plaintiff's Complaint should be dismissed.

---

[6] The Warner Publishers honored the controlled composition clause in the respective writers' agreements for all uses (digital and physical) of Defendants' Song by Atlantic. (Osher Decl. ¶ 10, Exs. B-C). For digital uses, EMI elected to issue mechanical licenses. As with the other licenses, the mechanical licenses issued by EMI for digital uses do not mention Pennsylvania and do not place any affirmative obligation upon Atlantic to exploit Defendants' Song in Pennsylvania or anywhere else. (Dallas Decl., at ¶ 10-12, Exs. B-D). Once the licenses were issued, as with the other licenses, EMI had no control over where in the U.S. or the extent to which Atlantic exploited Defendants' Song. (*Id.* at ¶ 12).

**D.**     **Plaintiff's Song and the Alleged "Similarities" To Defendants' Song**

Plaintiff is the alleged author of the lyrics and music to Plaintiff's Song.  Compl. ¶¶ 20-

22.  Plaintiff alleges to have written Plaintiff's Song in November of 2007, and obtained a

Certificate of Copyright Registration from the Library of Congress in February of 2008.  *Id.*

While the complaint concludes that "defendants infringed upon [*Pink N' Yellow*] by recording …

songs entitled 'Black and Yellow' (a/k/a 'Black & Yellow'), 'Black and Purple,' and 'Black and

Yellow (the G-Mix),'"[7]*id.* at ¶ 24, the complaint fails to identify any similarities between the

works.

While Plaintiff's Song and Defendants' Song are both in the "rap" genre, the Court can

hear for itself that they are entirely different songs.  Plaintiff's Song is a rap song, with lyrics

boasting of the singer's wealthy lifestyle.  Defendants' Song is also a rap song, but focuses on

the singer's prominence in Pittsburgh Pennsylvania's club scene.[8]Aside from the unprotectable

word "Yellow" and the random and fortuitous uses of a few common and unremarkable themes

in rap vernacular – such as cars and diamonds – there are no similarities between the lyrics or

music of the works.

The use of the word "Yellow" is (not surprisingly) not original to Plaintiff.  Pittsburgh,

Khalifa's hometown, has identified itself with the colors black and gold or black and yellow

historically.  Three of Pittsburgh's national sports teams wear black and yellow uniforms as do

---

[7] While there was a "G-Mix" version of *Black and Yellow* released, defendants are not aware of any version of Defendants' Song entitled "Black and Purple."  Plaintiff's attorney has not identified the basis for a claim of infringement regarding the purported "Black and Purple" composition.

[8]*See* Wikipedia page for Pittsburgh Pennsylvania available at http://en.wikipedia.org/wiki/Pittsburgh#cite_note-92 (last visited June 7, 2012) ("Pittsburgh's Wiz Khalifa is one of the first musical artists from Pittsburgh in recent memory to have a record at number one.  His anthem 'Black and Yellow' (which is itself a tribute Pittsburgh; black and yellow being the colors of the city's flag) reached number one on Billboard's 'Hot 100' for the Week of February 19, 2011").

the University of Pittsburgh Panthers.[9]   More than 100 years ago "Pittsburgh's council decided that the city flag would use black and gold – *really more of a yellow* – from the Pitt family's coat of arms." (emphasis added).[10]   The phrase "Black and Yellow" was employed by Khalifa to evoke his hometown Pittsburgh, Pennsylvania and the local sports teams.   The colors Black and Yellow are relevant to Pittsburgh, not Plaintiff's Song.

Moreover, as discussed below, there are at least 23 previous musical works titled "[*Color*] *and Yellow*"[11] (not to mention the dozens, if not hundreds, of songs that use the word, "yellow" in their lyrics).   Simply put, Plaintiff cannot stop Defendants or anyone else from using the color yellow in a song, even if used in combination with another color.   Despite Plaintiff's attempts, no copyright holder can monopolize the words "*N' Yellow*" in the chorus or title of a musical work. A comparison of the songs at issue reveals fundamental differences and demonstrates that Plaintiff's Complaint is without merit and should be dismissed.

---

[9] In addition to the Pittsburgh flag, the Pittsburgh Steelers, a premier team in the National Football League, wear black and yellow uniforms, as do the Pittsburgh baseball Pirates, the Pittsburgh hockey Penguins and the University of Pittsburgh Panthers (although the Penguins and Panthers wear more of a true gold color while the Steelers and Pirates use yellow).   The Court can take judicial notice that these colors are associated with the city of Pittsburgh.   *See* FRE 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) *is generally known within the trial court's territorial jurisdiction*; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.") (emphasis supplied).

[10] http://www.pennlive.com/midstate/index.ssf/2009/01/black_and_gold_define_pittsbur.html (last visited June 7, 2012).   Pittsburgh's flag contains two black stripes and one yellow stripe.

[11] *See e.g.*, *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007) ("It is not uncommon for courts to take judicial notice of factual information found on the world wide web."); *Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005) (taking judicial notice of information on website); *Schaffer v. Clinton*, 240 F.3d 878, 885 n.8 (10th Cir. 2001) (taking judicial notice of information available on a political website).

## ARGUMENT

## STANDARD OF REVIEW

The Supreme Court explained in *Bell Atl. Corp. v. Twombly* that Rule 8(a)(2) requires a complaint to contain a "showing" that a plaintiff is entitled to relief, and that this substantive threshold is not achieved by "blanket assertion[s]." 550 U.S. 544, 556 n. 3 (2007).A motion to dismiss under Rule 12(b)(6) is meant to test the sufficiency and plausibility of plaintiff's allegations. *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Thus, in order to survive a motion to dismiss, plaintiffs must do more than solely recite the elements for a violation; they must plead facts with sufficient particularity so that their right to relief is more than mere conjecture. *See Iqbal*, 556 U.S. at 677-78; *Twombly*, 550 U.S. at 561-62. The Court need not accept as true conclusory legal allegations. *Butts v. Hyde*, No. 11-4252, 2012 U.S. App. LEXIS 1860, at *2 (3d Cir. Jan. 31, 2012). Dismissal is warranted where the complaint fails to allege enough facts to state a claim for relief that is plausible on its face. *Twombly*, 550 U.S. at 570.

In deciding a motion to dismiss, courts will consider the complaint, as well as documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 550 U.S. 308, 322-23 (2007). Accordingly, courts deciding Rule 12(b)(6) motions concerning claims of copyright infringement have routinely taken judicial notice of the content of lyrics, musical compositions and other expressive works. *See e.g., Douglas v. Osteen*, 317 Fed. Appx. 97, 99 (3d Cir. 2009) (affirming dismissal of copyright claims on 12(b)(6) motion based on a lack of similarity between the works at issue); *Harris v. Winfrey*, No. 10-5655, 2011 U.S. Dist. LEXIS 28869, at *8 (E.D. Pa. Mar. 18, 2011) (comparing works on 12(b)(6) motion and dismissing copyright claims); *Pyatt v. Raymond,* 10

Civ. 8764 (CM), 2011 U.S. Dist. LEXIS 55754 (S.D.N.Y. May 19, 2011), *aff'd*, 2012 U.S. App. LEXIS 2736 (2d Cir. Feb. 9, 2012) (same); *Peters v. West*, 776 F. Supp. 2d 742, 747 (N.D. Ill. 2011) (same); *Winstead v. Jackson*, No. 10-5783 (SRC), 2011 U.S. Dist. LEXIS 107560, at *12-13 (D.N.J. Sept. 20, 2011) (examining allegedly infringing album and film and granting 12(b)(6) motion to dismiss copyright claim); *Alexander v. Murdoch*, 10 Civ. 5613 (PAC) (JCF), 2011 U.S. Dist. LEXIS 79503, at *8 (S.D.N.Y. July 14, 2011) (granting 12(b)(6) motion and dismissing claim of infringement after reviewing allegedly infringed script and allegedly infringing episode of televisions show *Modern Family*); *Phillips v. Murdock*, 543 F. Supp. 2d 1219, 1227 (D. Haw. 2008) (comparing works and dismissing copyright claim with prejudice); *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1130 (C.D. Cal. 2007) ("[t]here is ample authority for holding that when the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss") (citation and quotations omitted); *Nelson v. PRN Prods., Inc.*, 873 F.2d 1141, 1143-44 (8th Cir. 1989) ("[t]he trial judge could properly determine the matter of substantial similarity as a matter of law and did so by granting defendants' motion to dismiss the copyright count on the ground that it failed to state a claim for infringing use").

In light of these principles, the Court should consider, in addition to the facts alleged in the Complaint: (1) materials incorporated by reference in the Complaint; (2) materials relied on by Plaintiff in bringing the instant action; and (3) those materials integral to the allegations asserted, including:

- Plaintiff's Song (Ex. A at Track 2 to the accompanying Declaration of Ilene Farkas (the "Farkas Decl."));

- Defendants' Song (Farkas Decl., Ex. A at Track 1);

- For the Court's convenience in making lyric comparisons, Exhibit B to the Farkas Decl. presents the lyrics of each song in side-by-side format; and

- Information material to Plaintiff's allegations that is available on the internet.

If, after reviewing this material, the court finds that no protectable elements have been copied, it is entirely appropriate to dismiss the infringement claims on Defendants' 12(b)(6) motion. *Douglas*, 317 Fed. Appx. at 99 (affirming dismissal of copyright claims because plaintiff "did not allege that [defendant] copied constituent elements of his work that are original and protected by copyright"); *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) ("it is entirely appropriate for the district court to consider the similarity between [contested] works in connection with a motion to dismiss, because the court has before it all that is necessary in order to make such an evaluation."); *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 510 (7th Cir. 1994); *Alberto-Culver Co. v. Andrea Dumon, Inc.*, 466 F.2d 705, 710 (7th Cir. 1972); *Bell v. Blaze Magazine*, No. 99 Civ. 12342 (RCC), 2001 U.S. Dist. LEXIS 2783, at *9 (S.D.N.Y. Mar. 16, 2001) ("If a court determines that no reasonable jury could find that the works are substantially similar, or if it concludes that the similarities pertain only to unprotected elements of the work, it is appropriate for the court to dismiss the action because, as a matter of law, there is no copyright infringement.").

Defendants respectfully submit that dismissal is appropriate in this case.

## POINT I

## PLAINTIFF HAS FAILED TO ALLEGE THE
## REQUISITE ELEMENTS OF AN INFRINGEMENT CLAIM

### A.  The Standard For Alleging Copyright Infringement Claims

In the Third Circuit, "[t]o establish copyright infringement, the plaintiff must show (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are

original." *Douglas v. Osteen*, 560 F. Supp. 2d 362, 367 (E.D. Pa. 2008), *aff'd*, 317 Fed. Appx. 97, 99 (3d Cir. 2009) (citations and quotations omitted).    To allege the copying of original elements, the plaintiff must allege "that the defendant had access to the copyrighted work and that the original and allegedly infringing works bare *substantial* similarities." *Id.* (emphasis supplied; citation omitted). To survive a motion to dismiss, the alleged similarity:

> must amount to an unlawful appropriation *of protectable material*. Protectable material includes expressions of ideas, not the ideas themselves nor matters in the public domain...    Stated differently, *protectable material includes only the original elements of the plaintiff's work*.

*Id.* (emphases supplied; citations omitted); *see also Winstead*, 2011 U.S. Dist. LEXIS 107560, at *5 ("not all copying amounts to copyright infringement. To give rise to copyright infringement, a court must determine whether a 'lay-observer' would believe that the copying was of protectable aspects of the copyrighted work.") (citation and quotations omitted).

To determine whether two works are substantially similar, courts will examine "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's *protectable expression* by taking material *of substance and value*." *Susan Wakeen Doll Co. v. Ashton-Drake Galleries*, 272 F.3d 441, 451 (7th Cir. 2001) (emphases added; citations and quotations omitted); *Universal Athletic Sales Co. v. Salkeld*, 511 F.2d 904, 907 (3d Cir. 1975) (adopting the ordinary observer test for substantial similarity in the Third Circuit and finding no infringement).    This test takes into account that the copyright laws preclude appropriation of only those elements of the work that are protected by the copyright. *Jackson v. Booker*, No. 11-3400, 2012 U.S. App. LEXIS 3024, at *8 (3d Cir. Feb. 16, 2012) ("even if actual copying is proven, the court must decide, by comparing the allegedly infringing work with the original work, whether the copying was unlawful."); *Damiano v. Sony Music Entm't*, 975 F. Supp. 623, 627 (D.N.J. 1996) citing *Whelan*

*Assocs., Inc. v. Jaslow Dental Lab., Inc.*, 797 F.2d 1222, 1231 (3d Cir. 1986); *see also, Atari, Inc. v. North Am. Philips Consumer Elecs. Corp.*, 672 F.2d 607, 614 (7th Cir. 1982).

**B.     Plaintiff Has Not Alleged That Defendants Copied Protectable Elements of Plaintiff's Song Or That Defendants Had Access To Plaintiff's Song**

As the Supreme Court stated in *Iqbal*, in order to survive a motion to dismiss, plaintiffs must do more than simply recite the elements for a violation – plaintiffs must plead facts with sufficient particularity so that their right to relief is more than mere conjecture. 556 U.S. at 677-78; *see also Twombly*, 550 U.S. at 555.  Here, Plaintiff's only allegation of similarity is that "Defendants' New Song is so substantially similar to plaintiff WARREN's subject song as to constitute actionable unlawful copyright infringement under Title 17 of the United States Code and applicable case law."  Compl. at ¶25.  This bare conclusion does not meet the Rule 8 standard as explained in *Twombly*.  There are no facts alleged from which the Court could reasonably infer similarity, or from which the defendants are on notice as to what alleged similarities exist. The Court should dismiss the complaint on this basis alone.  *See e.g., Martinez v. McGraw*, No. 3:08-0738, 2009 U.S. Dist. LEXIS 69862, at*16 (M.D. Tenn. Aug. 10, 2009) (where plaintiff merely alleged that the infringing work was "substantially similar" and identified no factual similarities, complaint did not satisfy *Twombly* standard).  In *Martinez*, the court dismissed the complaint because it "merely restates the elements of the cause of action." *Id.* That is precisely all that Plaintiff's complaint does here.

Additionally, the complaint contains no allegations that any of the defendants had access to Plaintiff's Song.  Rather, Plaintiff simply concludes, through speculation, that defendant "Khalifa heard the Subject Song."  Compl. at ¶¶ 27-28.  Plaintiff's failure to allege any facts whatsoever supporting access by any Defendants is an independent grounds for dismissal. *See e.g.,Clay v. Cameron*, No. 10-22203-CIV-JORDAN, 2011 U.S. Dist. LEXIS 153496, at *6 (S.D.

Fla. Oct. 20, 2011) ("Because Ms. Clay fails to adequately allege that Mr. Cameron had access to Zollocco before he created Avatar, Ms. Clay's complaint fails to state a claim for copyright infringement."); *Martinez*, 2009 U.S. Dist. LEXIS 69862, at *11-12 ("Plaintiff fails to plead facts that amount to Defendants having access"); *cf. Maule v. Philadelphia Media Holdings, LLC*, No. 08-3357 (RFK), 2009 U.S. Dist. LEXIS 6795, at *10-11 (E.D. Pa. Jan. 30, 2009) (analyzing facts plead in complaint to determine that access was sufficiently alleged). The failure to allege any facts whatsoever from which similarity or access could reasonably be inferred is fatal to Plaintiff's complaint under *Twombly, Martinez* and *Clay* and warrants dismissal.

**C.   Plaintiff Has Not Alleged that Defendants' Song Copies Any Protectable Expression In Plaintiff's Song and Thus Has Failed to (and Cannot) Allege Substantially Similarity**

Even though Plaintiff fails to identify any similarities between the two songs at issue, no amendment would cure these deficiencies, as this Court can examine the songs and conclude for itself, on a motion to dismiss, that no actionable, or "substantial" similarity exists between the two works at issue. *Martinez*, 2009 U.S. Dist. LEXIS 69862, at *13-16; *Douglas*, 317 Fed. Appx. at 99; *Harris*, 2011 U.S. Dist. LEXIS 28869 at *8; *Pyatt*, 2011 U.S. Dist. LEXIS 55754; *Peters*, 776 F. Supp. 2d at 747; *Winstead*, 2011 U.S. Dist. LEXIS 107560, at *12-13.

**1.   Plaintiff's Song's Title Is Not A Protectable Element of The Song**

Plaintiff apparently (and mistakenly) believes that because Plaintiff's Song is titled *Pink N' Yellow* and Defendants' Song is titled *Black and Yellow*, Defendants' Song infringes Plaintiff's Song. However, "it has been well-established that a copyright in literary material does not secure any right in the ***title*** itself." *Kirkland v. National Broad. Co.*, 425 F.Supp. 1111, 1114

(E.D.Pa.1976), *aff'd w'out op.*, 565 F.2d 152 (3d Cir.1977) (emphasis supplied; citations omitted);*Hayes v. Koch Entm't*, G-06-515, 2008 U.S. Dist. LEXIS 33418, at *1 (S.D. Tex. Mar. 14, 2008) ("similarity of [] titles does not matter because [titles] are categorically not protectable."); *Peters*, 776 F. Supp. 2d at 749(finding rap song's title to be non-protectable element); *Currin v. Arista Records, Inc.*, 724 F. Supp. 2d 286, 292-93 (D. Conn. 2010), *aff'd*, 42 Fed. Appx. 21 (2d Cir. 2011) (holding that the title of the song "frontin" is a "non-protectable element of the plaintiffs' song"); *see also Phillips*, 543 F. Supp. 2d at 1224 ("the title alone of a literary work cannot be protected by copyright law") (citation omitted).  Here, the titles are not even the same – the only "similarity" seems to be the use of the word "yellow" and the concept of connecting "yellow" to another color (which concept is not copyrightable expression).  Accordingly, Plaintiff cannot premise a claim of infringement upon the different titles of the two songs.

### 2.   The Remaining Arguable "Similarities" Are Not Protectable

#### a.   "N' Yellow" and the Use of "Cars" and "Diamonds" Are Not Sufficiently Original To Be A Protectable Element of Plaintiff's Song

Plaintiff's infringement claim also appears to be based on his mistaken belief that because Defendants' Song uses the phrase "black and yellow" in its chorus, and Plaintiff's Song uses the (different) phrase "pink n' yellow" in its chorus, Defendants have infringed Plaintiff's Song.  First, Plaintiff seems to be seeking a monopoly on the use of the concept of using any mono-syllabic color in combination with yellow in a song, however that concept is expressed.  This violates a basic tenet of copyright law, which only protects the expression of ideas, and not the ideas themselves. 17 U.S.C. § 102 (b) ("[i]n no case does copyright protection for an original

work of authorship extend to any *idea*, procedure, process, system, method of operation, *concept*, principle, or discovery…") (emphases supplied); *Universal Athletic*, 511 F.2d at 908 ("copyright does not protect ideas -- only expressions"). Here, the concept is unprotectable, and each song expresses that concept differently.

Thus, Plaintiff is left with the "similarity" of the use of the words "N' Yellow" (vs. "and yellow") in the two songs, and the use of such commonplace lyrics as "car" and "diamonds" in different places in each rap song. It is black-letter copyright law that such words and short phrases are not protectable. *See Douglas*, 317 Fed. Appx. at 99 ("words and short phrases are excluded from copyright protection") citing 37 C.F.R. 202.1(a); *Douglas v. Wal-Mart Stores, Inc.*, No. 05-152 (ECR), 2005 U.S. Dist. LEXIS 30138 (E.D. Pa. Nov. 30, 2005) (Robreno, J.), *aff'd*, 208 Fed. Appx. 943 (Fed. Cir. 2006) (use of common words does not constitute illicit copying). *See also, O'Brien v. Chappel & Co.*, 159 F. Supp. 58, 59 (D.N.Y. 1958) (granting motion for judgment on the pleadings and dismissing infringement claim premised upon use of the phrase "night and noon" because "copyright or literary rights do not extend to words or phrases isolated from their context, nor do they extend to abstract ideas or situations") (citations omitted); *Bell*, 2001 U.S. Dist. LEXIS 2783, at *6-7 ("[w]ords and short phrases, such as titles or slogans, are insufficient to warrant copyright protection, as they do not exhibit the minimal creativity required for such protection. Similarly, copyright protection does not extend to a concept or idea, regardless of the form in which it is communicated, explained, illustrated, or embodied.") (internal citations omitted); *Steele v. Turner Broad. Sys.*, 646 F. Supp. 2d 185 (D.

17

Mass. 2009) (despite sharing the same three words "I love this [team/town]" in both songs' choruses, court found no similarity as matter of law).[12]

Recently, many courts around the country examining similar allegations have found that the mere use of a combination of a few common words and phrases in a song's chorus cannot, as a matter of law, constitute infringement. For example, in *Peters v. West*, plaintiff sued musician Kanye West for allegedly copying his lyrics for the chorus and title of West's hit song "Stronger."776 F. Supp. 2d 742 (N.D. Ill. 2011). Analyzing the complaint on a motion to dismiss, the court first found that a song's title is not protectable. *Id.* at 749. Next the court found that both songs' references to English supermodel Kate Moss was not an actionable similarity because her name was a fact, not copyrightable expression. *Id.* at 749. The court then examined the songs' choruses, both of which contained a variation on Frederich Neitze's famous quote "that which does not kill us makes us stronger." The court concluded that the famous maxim was not original to plaintiff and was thus not a protectable element of plaintiff's work. *Id.* The court determined that the lyrics "can't wait much longer" and "couldn't wait no longer" were both non-protectable short phrases in the songs' respective choruses, and that both songs rhyme of this line with the word "wronger" was likewise non-protectable as part of a common rhyme scheme. *Id.* at 750. The court concluded that because West's song shared no protectable

---

[12]*See also Sinclair L.D. Johnson Int'l, Inc. v. Faulkner Nissan, Inc.*, No. 1:06-CV-2256, 2010 U.S. Dist. LEXIS 21384, at *17 (M.D. Pa. Jan. 27, 2010) (phrases "Test Market Pricing" and "Special Notice" not entitled to copyright protection, and finding no similarity even were they protectable) adopted at *Sinclair L.D. Johnson Int'l, Inc. v. Faulkner Nissan Inc.*, 2010 U.S. Dist. LEXIS 21422 (M.D. Pa. Mar. 9, 2010); *Magic Marketing, Inc. v. Mailing Services of Pittsburgh, Inc.*, 634 F. Supp. 769 (W.D. Pa. 1986) (short phrases on promotional mailers not entitled to copyright protection); *Johnson v. Gordon*, 409 F.3d 12, 19, 22 (1st Cir. 2005) (copyright law does not protect ideas or common and unoriginal expressions of them); *CMM Cable Rep, Inc. v. Ocean Coast Props., Inc.*, 97 F.3d 1504, 1519-20 (1st Cir. 1996) (copyright protection does not extend to the ordinary phraseology used in a copyrighted work); *Arica Inst., Inc. v. Palmer*, 970 F.2d 1067, 1067 (2d Cir. 1992) (single words or short phrases are not copyrightable and are insufficient to establish infringement).

similarities with plaintiff's song, plaintiff had failed to state a claim and dismissed the complaint on a motion to dismiss. *Id.* at 752.

Similarly, in *Prunte v. Universal Music Group, Inc.*, plaintiff alleged that numerous defendants' rap songs had infringed his own music and lyrics. 699 F. Supp. 2d 15, 25 (D.D.C. 2010), *aff'd*, 425 Fed. Appx. 1 (D.C. Cir. 2011). The court analyzed the songs on a motion to dismiss and determined that none of the allegedly infringing songs had copied any protectable elements of the plaintiff's works. For example, the court rejected plaintiff's claim that defendants' song "Fire in Da Hole" infringed upon his own song "Fire in the Hole" because titles are not protectable, and because the use of the short phrase "fire in the hole" in the songs' respective choruses was not protectable. *Id.* at 25-27. The court found that any similarity between defendants' song "So High" and plaintiff's song "I'm So High" based upon the use of the short phrase "so high" in the songs' choruses was likewise not actionable, *Id.* at 26, that "short phrases [in another song's chorus] such as 'I'm a maniac' are not entitled to copyright protection," *id.* at 30, and that "'that's what's up' [as a song's title and chorus] is a common, short phrase and so is not protectible." *Id.* The court dismissed the complaint because its numerous claims were each entirely premised upon defendants' use of non-protectable short phrases that coincidentally were present in plaintiff's songs' titles and choruses. *Id.* (denying plaintiff's claim that 'I'm N Luv (Wit a Stripper)' by T-Pain is substantially similar to his song 'Stripper Girl' because both mention a stripper in their title and chorus, and both express the narrator's 'deep love and admiration for the 'Stripper Girl' or the 'Girl Who Strips''.... as "[t]hese claims are light-years away from establishing substantial similarity.") *Id.* at 28.

In *Pyatt v. Raymond,* 2011 U.S. Dist. LEXIS 55754 (S.D.N.Y. May 19, 2011), *aff'd*, 2012 U.S. App. LEXIS 2736 (2d Cir. Feb. 9, 2012), plaintiff alleged that the president of a

record label provided her song "Caught up" to the recording artist Usher, who copied it in his own song also titled "Caught Up." *Id.* at *5-8. Defendant moved pursuant to Rule 12(b)(6), arguing that any similarities present in defendants' song were not protectable. The Court considered the complaint, and the works at issue, because "they were clearly relied on by Plaintiffs in commencing this suit." *Id.* at *14. The court further assumed actual copying by the Defendants and addressed only the question of whether substantial similarity existed between Usher's song and any protectable element of plaintiff's song. *Id.* at *15. Finding no similarities between the contested works' musical elements, and no lyrical similarity beyond use of the phrase "caught up" in the songs' choruses, the court granted the motion to dismiss the complaint. *Id.* at *22-27. The Second Circuit subsequently affirmed the district court's dismissal and denial of a subsequent motion for leave to amend. *Pyatt*, 2012 U.S. App. LEXIS 2736, at *2 (affirmed, holding that the "originally registered copyrights and Usher's 'Caught Up' have little in common beyond the title and the phrase 'Caught Up.' The songs are lyrically and musically distinct and the district court correctly concluded that the claim failed the ordinary observer test.").

Finally, in *Lil' Joe Wein Music, Inc. v. Jackson*, the Eleventh Circuit held that there was no similarity as a matter of law because defendant's song "In Da Club" was not substantially similar to plaintiff's song "Its Your Birthday." 245 Fed. Appx. 873, 875 (11th Cir. 2007). The court held that the "it's your birthday" phrase in both songs was not an original aspect of the plaintiff's song and was not entitled to copyright protection.[13]

Here, as in *Peters*, *Prunte*, *Pyatt*, and *Lil' Joe Wein Music*, this Court can examine the two songs on a 12(b)(6) motion, and see for itself that there are two words in common in the

---

[13]*See also, Darden v. Peters*, 488 F.3d 277, 286 (4th Cir. 2007) ("The Copyright Office established a regulation providing examples of the types of works that fall into the category of works that lack a minimum level of creativity and do not qualify for copyright protection, including '[w]ords and short phrases such as names, titles, and slogans…'") quoting 37 C.F.R. § 202.1(a).

choruses, and the most distinctive word is "Yellow." The words "car" and "diamonds" also appear in each songs' verses, albeit in different locations in each. Copyright principles, recent precedent, and the Copyright Office's regulations all mandate dismissal of this action.

### b. There are Many Other Musical Compositions Which Use the Phrase "[Color and] Yellow"

Not surprisingly, there are least 23 songs titled with some variation "[Color] and yellow" written before Plaintiff's Song, and at least four songs titled with some variation of "Black [&] Yellow" written before Plaintiff's Song.[14] The lyrics "[Color] N' Yellow" are simply not copyrightable and not original to Plaintiff. *See e.g., Boone v. Jackson*, 206 Fed. Appx. 30, 33 (2d Cir. 2006) (finding that "holla back" was not protectable under copyright and noting that over 30 songs were presented to the Court which used "holla back" at around the same time that plaintiff's song was recorded and released); *Currin*, 724 F. Supp. 2d at 292-93 (holding that use of the word "frontin" was not original to plaintiff); *Prunte*, 699 F. Supp. 2d at 27 (rejecting infringement claim based upon use of title "get it poppin" in title and chorus of song, "[t]itles and common phrases such as 'get it poppin' are not protectible by copyright"); *Phillips*, 543 F. Supp. 2d at 1225 (noting that use of "bible" in title was not original to plaintiff and dismissing claims on 12(b)(6)); *Armour v. Knowles*, No. H-05-2407, 2006 U.S. Dist. LEXIS 67783, at *10 (S.D. Tex. Sept. 21, 2006), *aff'd*, 512 F.3d 147 (5th Cir. 2007) dismissing complaint when sole similarity in the lyrics was the phrase "Every time I close my eyes", holding that"[s]uch a common phrase lacks originality and is not protected under copyright law."); *Acuff-Rose Music v. Jostens, Inc.*, 155 F.3d 140, 144 (2d Cir. 1998) (finding the phrase, "you've got to stand for something, or you'll fall for anything" too common to accord copyright protection). Thus, there are no actionable similarities between the two songs.

---

[14] *See* Farkas Decl., Exh. C.

3.     **The Songs Contain Numerous Differences**

    a.     **The Lyrics Are Different**

    The lyrics to Defendants' Song contain hundreds of words. *See* Farkas Decl., Ex. B. The numerous differences between Defendants' Song's lyrics and Plaintiff's Song's lyrics cannot be overcome merely by the use of "[Color and] Yellow," "diamond" or "car" in each song. *Segal v. Paramount Pictures*, 841 F. Supp. 146, 149 (E.D. Pa. 1993) (Robreno, J.), *aff'd*, 37 F.3d 1488 (3d Cir. 1994) ("[T]he existence of some common features in the face of overwhelming differences between the works is insufficient to show substantial similarity.").

    In *Damiano v. Sony Music Entertainment*, 975 F. Supp. 623, 629 (D.N.J. 1996), the plaintiff claimed that defendant Bob Dylan copied several lyrics from his song. The plaintiff conceded that the lyrics at issue consisted of common and unoriginal words and phrases, but nonetheless argued that the arrangement of those words and phrases were protectable. *Id.* at 629. In fact, the plaintiff there argued – as does Plaintiff here – that Dylan could not subsequently use the same pairs of words or phrases together in a lyric, even if separated by intervening lines or ideas. *Id.* The court disagreed and said that the plaintiff cannot hold a "monopoly over the use of common combinations of words... merely because they are found together in a single song." *Id.* According to the court, "[s]uch a result would ... contravene the very policy behind copyright law and the rule requiring sufficient originality for a work to be protected... Indeed, the law of copyright has absolutely no interest in tying up the random, fortuitous combination of words." *Id.* (citation omitted).

    This principle has been repeated by many courts facing similar claims. *See e.g., Lil' Joe Wein Music, Inc.*, 245 Fed. Appx. at 878 (holding that combination of lyrics is unoriginal and unprotectable); *Prunte*, 699 F. Supp. 2d at 27 (dismissing infringement claim because "aside

from the repeated use of the word 'king,' the lyrics of the two songs are entirely different.").
*Steele*, 646 F. Supp. 2d at 191 (finding "come on," "here we go," "I love this," to be non-protectable elements and holding that "[w]hen those unprotected elements are filtered out, the Steele Song and Bon Jovi Song display little lyrical similarity, and certainly not the substantial similarity required to prove a claim of copyright infringement.").

The songs here simply share no similarity beyond the short phrase "[Color and] Yellow" and generic references to "cars" and "diamonds," and accordingly the Court should dismiss the Complaint. *Prunte*, 699 F. Supp. 2d at 26 ("[Plaintiff's] claim of similarity appears to be based entirely on the fact that the defendants' two songs use the words 'smoke' and 'drink' in their choruses. Needless to say, the mere use of those two words, whether together or separately, is not protectible expression.") (internal citation omitted). Plaintiff may not latch on to a few commonplace similar words in the songs – out of hundreds of lyrics – and attempt to establish actionable similarity where there is none.

### b.   The Music Is Different

A "lay listen" of the music of the two songs at issue reveals that these are two entirely different songs. Plaintiff's Song repeats "Pink N' Yellow" twice in between other lines in the chorus, while Defendants' Song repeats "Black and Yellow" four times. Plaintiff's Song's chorus features an abrasive electric guitar. Defendants' Song is faster. Plaintiff's Song is structured with an introduction section, but Defendants' Song begins with the chorus. There are three verses that rotate in order with the chorus in Plaintiff's Song, but there are only two verses that rotate with the chorus section in Defendant's Song. Defendants' Song has a bridge, but Plaintiff's Song does not. The outro in Plaintiff's Song includes a fade out but the outro section

in Defendant's Song does not. Thus, the structure of the two songs is significantly different, and any similarities between the structures are generic.

With regard to harmony, Plaintiff's Song is in a major key and Defendants' Song is a minor key. There are no vocal melodies in Plaintiff's Song; the vocal parts are rapped and not sung. In contrast, the vocal parts in Defendants' Song are rapped in some portions and sung in other portions. There are no melodic similarities between the instrumental music in Defendants' Song and Plaintiff's Song. *See e.g., Gottwald v. Jones*, No. 11 Civ. 1432 (CM)(FM), 2011 U.S. Dist. LEXIS 103414, at *18 (S.D.N.Y. Sept. 12, 2011) (dismissing infringement claim on 12(b)(6) motion because "no average observer would recognize [defendants' musical composition] as having been appropriated from [plaintiff's musical composition]" when songs shared uncopyrightable rhythmic pulse but one song was in minor key and the other major and the songs' melodies sounded nothing alike); *Staggs v. West*, No. PJM 08-728, 2009 U.S. Dist. LEXIS 72275, at *7-8 (D. Md. Aug. 14, 2009) (evaluating the melody of two songs on a motion to dismiss, finding no similarity, and finding identical phrases in songs such as "good life" not copyrightable); *Prunte*, 699 F. Supp. 2d at 25 ("[t]he use of a cliché short phrase in a hip-hop song treating a very common subject cannot be said to create a distinctive musical effect").

It is respectfully submitted that any ordinary listener would determine that there are no significant melodic, rhythmic, harmonic or structural similarities, individually or combined that suggest that Defendants' Song was copied from Plaintiff's Song. Accordingly, the Court should dismiss Plaintiff's infringement claim pursuant to Fed. R. Civ. P. 12(b)(6).

## POINT II

### THE PUBLISHING DEFENDANTS SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION PURSUANT TO RULE 12(b)(2)

In the event that the Court denies any portion of Defendants' 12(b)(6) motion, Plaintiff's Complaint against the Publishing Defendants should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) because this Court lacks personal jurisdiction over the Publishing Defendants.

### A. Plaintiff Bears the Burden of Proof to Establish that Personal Jurisdiction Exists

Before the Court may exercise personal jurisdiction over any one of the Publishing Defendants, Plaintiff must show that:   (i) jurisdiction is proper under the laws of the Commonwealth of Pennsylvania; and (ii) the exercise of jurisdiction does not offend the Due Process Clause of the Fourteenth Amendment.   *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 107 (3d Cir. 2009).   Because the reach of Pennsylvania's long-arm statute is coextensive with the constitutional limits of due process, this two-step inquiry collapses into a single step:   whether jurisdiction is consistent with due process.   42 Pa. Cons. Stat. § 5322 (2004); *Mellon Bank (East) PSFS, N.A. v. Farino,* 960 F.2d 1217, 1221 (3d Cir. 1992) (finding that Pennsylvania's long-arm statute authorizes Pennsylvania courts "to exercise personal jurisdiction over nonresident defendants to the constitutional limits of the due process clause of the fourteenth amendment"); *TruePosition, Inc. v. LM Ericsson Telephone Co.*, No. 11-4574, --- F. Supp. 2d ---, 2012 U.S. Dist. LEXIS 1646, at *39 n.16 (E.D. Pa. Jan. 6, 2012) (quoting *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prods. Co.*, 75 F.3d 147, 150 (3d Cir. 1996)).

Once jurisdiction is challenged, Plaintiff bears the burden of proving that personal jurisdiction exists over each defendant. *Massachusetts Sch. of Law at Andover, Inc. v. American Bar Ass'n*, 846 F. Supp. 374, 377 (E.D. Pa. 1994). Plaintiff cannot satisfy his burden by merely

relying on the allegations in his Complaint. *Schiller-Pfeiffer, Inc. v. Country Home Prods., Inc.*, No. 04-1444, 2004 U.S. Dist. LEXIS 24180, at *14-15 (E.D. Pa. Dec. 1, 2004). Instead, he must establish that personal jurisdiction exists by putting forth "'sworn affidavits or other competent evidence.'" *Beistle Co. v. Party City U.S.A., Inc.*, 914 F. Supp. 92, 94 (M.D. Pa. 1996) (quoting *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984)).

> [A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of *in personam* jurisdiction. Once the motion is made, plaintiff must respond with actual proofs, not mere allegations.

*Patterson v. FBI*, 893 F.2d 595, 603-04 (3d Cir. 1990) (internal citations omitted).

### 1. The Publishing Defendants Have Not Maintained Sufficient Contacts with the Commonwealth of Pennsylvania to Satisfy the Constitutional Standard for Personal Jurisdiction

To satisfy due process, Plaintiff must prove that each of the Publishing Defendants has "minimum contacts" with Pennsylvania such that they "should reasonably anticipate being haled into court here." *Integral Nuclear Assocs., LLC v. Nair*, No. 05-382, 2005 U.S. Dist. LEXIS 17528, at *13 (E.D. Pa. Aug. 19, 2005) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); other citations omitted). This minimum contacts standard may be met by establishing either general or specific jurisdiction. *Koczkodon v. Grand Versailles, LLC*, No. 10-3284, 2010 U.S. Dist. LEXIS 98547, at *4 (E.D. Pa. Sept. 17, 2010). General jurisdiction exists only if Plaintiff demonstrates that each of the Publishing Defendants has "continuous and systematic" contacts with Pennsylvania. *Kimball v. Countrywide Merchant Servs.*, No. 04-3466, 2005 U.S. Dist. LEXIS 1817, at *9-10 (E.D. Pa. Feb. 8, 2005) (Robreno, J.) (quoting *BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 259 (3d Cir. 2000)). Specific jurisdiction exists only where the defendant has "'purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or related to those

activities.'" *BP Chems. Ltd.*, 229 F.3d at 259 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).  Plaintiff cannot establish either general or specific jurisdiction over the Publishing Defendants because none of them have continuous and systematic contacts with Pennsylvania and because none of them purposefully directed activities at Pennsylvania from which Plaintiff alleges to have suffered any injury.

**a.**     **This Court Does Not Have**
       **General Jurisdiction Over the Publishing Defendants**

General jurisdiction does not exist over the Publishing Defendants because Plaintiff alleges no facts in the Complaint whatsoever showing that any of them maintain "continuous and systematic" contact with Pennsylvania.  (*See* Complaint ¶¶ 13-15, 47-50).  Indeed, as set forth in the accompanying declarations of Stephen J. Dallas and Nathan Osher, the Publishing Defendants do not possess the requisite "perpetual, abiding ties to the forum" to satisfy the standard for general jurisdiction.  *See Penn Mut. Life Ins. Co. v. BNC Nat. Bank*, No. 10-00625, 2010 U.S. Dist. LEXIS 91362, at *7 (E.D. Pa. Sept. 2, 2010) (quoting *In re Chocolate Confectionary Antitrust Litig.*, 641 F. Supp. 2d 367, 383 (M.D. Pa. 2009)).  The Publishing Defendants maintain no offices or employees in Pennsylvania.  They do not conduct business in Pennsylvania and do not possess any business licenses or registrations to conduct business in Pennsylvania.  (Dallas Decl. at ¶¶4-5, Ex. A; Osher Decl. at ¶¶ 4-5, Ex. A).  The Publishing Defendants do not advertise or cause others to advertise on their behalf in Pennsylvania.  (Dallas Decl. at ¶ 4; Osher Decl. at ¶ 4).

In sum, the Publishing Defendants do not have any meaningful contacts with Pennsylvania, and certainly not the type of systematic and continuous contacts necessary to establish general personal jurisdiction over them.  *See, e.g., Kimball*, 2005 U.S. Dist. LEXIS 1817, at *9-10 (granting motion to dismiss copyright, trademark, and unfair competition claims

27

for lack of personal jurisdiction because defendant maintained no offices in Pennsylvania, leased no property in Pennsylvania, and did not derive any meaningful sales from Pennsylvania); *Jumpp v. Jerkins*, No. 08-6268, 2010 U.S. Dist. LEXIS 68059, at *10-11 (D.N.J. July 7, 2010). Therefore, the Publishing Defendants are not subject to general jurisdiction in Pennsylvania.

      **b.**     **This Court Does Not Have
                Specific Jurisdiction over the Publishing Defendants**

Courts in the Third Circuit determine whether specific personal jurisdiction exists through the application of a three-part inquiry:

> First, the defendant must have 'purposefully directed its activities" at the forum. Second, the litigation must 'arise out of or relate to' at least one of those activities. And third, if the prior two requirements are met, a court may consider whether the exercise of personal jurisdiction otherwise 'comports with fair play and substantial justice.'

*Sieg v. Sears Roebuck & Co.*, --- F. Supp. 2d ---, 2012 U.S. Dist. LEXIS 23888, at *7 (M.D. Pa. Feb. 24, 2012) (quoting *D'Jamoos*, 566 F.3d at 102).  Specific jurisdiction does not exist over the Publishing Defendants because Plaintiff's alleged injuries do not arise out of any activities that the Publishing Defendants directed at residents of Pennsylvania.

Plaintiff's Complaint, on its face, does not contain a single allegation that any of the Publishing Defendants specifically directed activity at residents of Pennsylvania resulting in alleged injury to Plaintiff.  (*See* Complaint ¶¶ 13-15, 47-50).  Giving Plaintiff's Complaint the most generous reading, Plaintiff first implies, perhaps, certain Publishing Defendants – WB Music and Warner/Chappell, "administer[] the publishing for co-defendant PGH," a Pennsylvania limited liability company.  (*See* Complaint ¶¶ 13-14).[15]  Plaintiff does not allege (nor could he) that his claims arise out of this relationship.  Rather, Plaintiff's claims arise out of

---

[15] As of the filing of this motion, defendant PGH has not been served.

the creation of Defendants' Song, which predated any assignment of rights from PGH to WB Music Corp. or Warner/Chappell.

The co-publishing agreement, pursuant to which WB Music Corp. obtained the right to publish and administer Defendants' Song, is between WB Music Corp. and Khalifa, not PGH. (Osher Decl., Ex.B).   However, even taking Plaintiff's allegations as true, even if the co-publishing agreement was entered into by PGH Sounds, the fact that WB Music happened to contract with a resident of Pennsylvania has nothing to do with Plaintiff's infringement claims (and would not be so even if the contract itself forms the basis of the litigation – which it does not). *See, e.g., Vetrotex Certainteed Corp.*, 75 F.3d at 153-54; *Live Face on Web, LLC v. Highview Travel, LLC*, No. 11-2497, 2012 U.S. Dist. LEXIS 8697, at *17-20 (E.D. Pa. Jan. 25, 2012) (defendant was not subject to specific jurisdiction in Pennsylvania merely because it had entered into the allegedly breached license with a Pennsylvania resident where defendant had made no physical entry into Pennsylvania and the alleged misconduct by the defendant occurred in New York); *Utilitech, Inc. v. Somerset Med. Ctr.*, No. 06-1232, 2006 U.S. Dist. LEXIS 40126, at *20-23 (E.D. Pa. June 15, 2006).

Indeed, it is indisputable that "[c]ontracting with a resident of the forum state alone does not justify the exercise of personal jurisdiction over a non-resident defendants." *Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., Inc.*, 983 F.2d 551, 557 (3d Cir. 1993); *see also Regan v. Loewenstein*, No. 06-0579, 2007 U.S. Dist. LEXIS 48476, at *8 (E.D. Pa. July 3, 2007), *aff'd*, 292 Fed. Appx. 200 (3d Cir. 2008) ("[E]ntering a contract with a resident of a forum alone does not establish minimum contacts to justify the court's exercise…" of specific personal jurisdiction over a defendant).

Plaintiff's barebones allegations in this case, which merely conclude that two of the three Publishing Defendants administer publishing for a Pennsylvania resident, do not come close to setting forth facts that could establish specific jurisdiction over any one of the Publishing Defendants.  As a matter of law, Plaintiff's allegations are manifestly insufficient to satisfy Plaintiff's burden of proof to set forth specific facts making a *prima facie* showing that specific jurisdiction exists over the Publishing Defendants. *See Vetrotex Certainteed Corp.*, 75 F.3d at 151 (finding that contractual relationship with resident of forum standing alone "is an insufficient ground upon which to exercise specific personal jurisdiction…").

To the extent that the Complaint can be read to suggest that the Publishing Defendants permitted mechanical licenses to be issued to Atlantic, the record company – which permitted nationwide distribution of Defendants' Song on the Album – constitutes some basis for jurisdiction over the Publishing Defendants in Pennsylvania, that too fails.  It is well settled that merely placing a product in the stream of commerce (such as a musical composition) with "'knowledge or awareness that one's products will end up in the forum state'" is legally insufficient to find that a defendant has maintained minimum contacts with the forum. *Jumpp*, 2010 U.S. Dist. LEXIS 68059, at *9 (quoting *Renner v. Lanard Toys Ltd.*, 33 F.3d 277, 282 (3d Cir. 1994)).  The law requires purposeful contact. *Id.*

This principle was recently applied by the Sixth Circuit in a scenario virtually identical to the instant case.  In *Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 477-478 (6th Cir. 2003), a Michigan-based record company sued for copyright infringement in Tennessee District Court against a music publisher, which was a Texas corporation with its principal place of business in Texas.  The plaintiff argued that the defendant publisher had purposefully availed itself of the Tennessee forum by issuing mechanical licenses for the nationwide use of the

compositions at issue, and had received royalties therefrom. *Id.* at 480.  The plaintiff argued that, in connection with these mechanical licenses, the Texas-based defendant had a financial interest in selling as many compositions as possible, and knew that its distributors were likely to distribute the works throughout the United States, including in Tennessee.

> The Sixth Circuit rejected these arguments.

> [Plaintiff] does not assert that [the publisher defendant] entered into a distribution agreement with [the record company] or any other party that placed an affirmative obligation upon the third party to distribute [the publisher's] compositions in Tennessee or elsewhere.  [Plaintiff] even concedes…that … 'how the subject composition is exploited is pretty much out of [the defendant publisher's] hands.'  [The publisher's] knowledge that [the record company] was likely to distribute [defendant publisher's] compositions nationally, coupled with its lack of objection to Tennessee sales, if such sales were ever to occur, is insufficient conduct upon which to predicate purposeful availment.

*Id.* at 480.

The Sixth Circuit's decision in *Bridgeport* mandates dismissal of Plaintiff's claims against the Publishing Defendants.  The standard nationwide mechanical licenses issued to Atlantic for the use of Defendants' Song do not rise to the level of a "purposeful availment" of the privileges of conducting business in Pennsylvania.  Indeed, unlike in *Bridgeport,* where the publishers affirmatively issued the mechanical licenses to the record company, here, the Publishing Defendants engaged in no such affirmative act.  Rather, with the exception of the EMI's issuance of a mechanical license for digital uses (which does not confer jurisdiction), they simply elected to honor the "controlled composition clause" in the artist's recording agreement with Atlantic, which Atlantic treated as a mechanical license to distribute the Defendants' Song on the Album.  (Dallas Decl. at ¶ 10, Ex. B; Osher Decl. at ¶¶ 10, Ex. B).

The licenses do not specifically permit or direct that Defendants' Song be distributed by Atlantic in Pennsylvania.  (Dallas Decl. at ¶ 10-12, Exs. B-C; Osher Decl. at ¶¶ 10-11, Exs. B-D).

These mechanical licenses in no way create an affirmative obligation upon Atlantic to distribute the Defendants' Song in Pennsylvania, or anywhere else.   Further, as in *Bridgeport*, the Publishing Defendants did not retain or exercise any control over how, when, or where the recording of Defendants' Song would be distributed.  In fact, as in *Bridgeport*, "how the subject composition is exploited is pretty much out of [the Defendant Publishers'] hands."  327 F.3d at 480. (Dallas Decl. at ¶ 12; Osher Decl. at¶ 11).  Finally, the Publishing Defendants do not directly or indirectly advertise or require others to advertise the Defendants' Song in Pennsylvania. *See* p. 10, *supra.*

In another recent and analogous case, the District Court of New Jersey rejected plaintiff's attempt to obtain personal jurisdiction over a music publisher under the stream of commerce theory. *Jumpp*, 2010 U.S. Dist. LEXIS 68059, at *8-10.  The plaintiff implicitly argued that the publisher defendant was subject to the Court's specific personal jurisdiction "because Defendant purposefully availed itself of doing business in New Jersey when it licensed Enough Cryin' to Geffen, which in turn allegedly distributed the song in New Jersey." *Id.* at *9.  As with the licenses here, the court noted that the license contained no obligation that Geffen distribute the song in New Jersey. *Id.*  The court held that the music publisher was not subject to personal jurisdiction in New Jersey, as "'mere knowledge or awareness that one's product will end up in the forum state' is not enough to establish minimum contacts sufficient for personal jurisdiction." *Id.* (quoting, *Renner*, 33 F.3d at 282); *see also, Irizarry v. East Longitude Trading Co.,* 296 F. Supp. 2d 862, 868 (N.D. Ohio 2003) (where the court found no showing of purposeful availment where agreement between defendant manufacturer and distributor did not place an affirmative obligation on distributor to distribute defendant's products on a nationwide basis or in any

particular market and there was no evidence that defendant retained any control over how, when or where the products were distributed).

Here, the Publishing Defendants have taken no steps to license the Defendants' Song for distribution specifically in Pennsylvania and no steps to advertise or require others to advertise the Defendants' Song in Pennsylvania. (Dallas Decl. at ¶ 9; Osher Decl. at ¶ 9). Nothing in the licenses creates any obligation upon Atlantic to distribute the Defendants' Song in Pennsylvania. (Dallas Decl. at ¶ 12; Osher Decl. at ¶ 11). Further, the Publishing Defendants neither retain nor exercise any control over how, when, or where the Defendants' Song will be distributed. (Dallas Decl. at ¶ 12; Osher Decl. at ¶ 11). Simply put, there are no facts demonstrating that any of the Publishing Defendants knew that the Defendants' Song would end up in Pennsylvania or that any one of them expected to derive a substantial benefit from the Defendants' Song in Pennsylvania. The due process clause requires a purposeful direction of activities at the forum state to exercise specific jurisdiction over a non-resident defendant. Plaintiff's Complaint in this case indisputably lacks this necessary allegation about the Publishing Defendants and, based on the Dallas and Osher Declarations, no such allegation can be stated.

Accordingly, the Publishing Defendants should be dismissed from this case pursuant to Fed. R. Civ. P. 12(b)(2).

## POINT III

### WITHOUT PERSONAL JURISDICTION OVER THE PUBLISHING COMPANIES, THE COURT MUST DISMISS THE COMPLAINT PURSUANT TO RULE 12(b)(7)

Plaintiff's complaint should be dismissed because as set forth in Section II, *supra*, there is no basis for the Court to exercise personal jurisdiction over the Publishing Defendants in this action, and the Publishing Defendants are both "necessary" and "indispensable" parties to resolving Plaintiff's claims pursuant to Rules 12(b)(7) and 19.

Rule 12(b)(7) provides that a complaint should be dismissed upon a plaintiff's "failure to join a party under Rule 19." Rule 19 sets forth a two-step analysis for whether to dismiss an action for failure to join an absent party. First, Rule 19(a) provides a framework for deciding whether a given person or party should be joined, *i.e.*, whether the non-joined party is "necessary." If joinder is called for, then Rule 19(b) guides a court in deciding whether the suit should be dismissed if that person cannot be joined, *i.e.*, whether the party is "indispensable." *Angst v. Royal Maccabees Life Ins. Co.*, 77 F.3d 701, 705-06 (3d Cir. Pa. 1996). If an absent party is both "necessary" and "indispensable," then claims affecting that party's rights should be dismissed and re-asserted in a forum where that party can be joined. *See e.g., Marra v. Burgdorf Realtors, Inc.*, 726 F. Supp. 1000, 1003 (E.D. Pa. 1989); *F & M Distribs., Inc. v. American Hardware Supply Co.*, 129 F.R.D. 494, 499 (W.D. Pa. 1990).

Here, the Publishing Defendants are necessary and indispensable parties to the Complaint. First, EMI and the Warner Defendants each own or control the exclusive rights to 50% of Defendant's Song in the U.S. and derive income from its exploitation. The Publishing Defendants therefore "claim[] an interest relating to the subject of the action," so that disposition of the action in the Publishing Defendants' absence would "impair or impede [their] ability to protect that interest." Fed. R. Civ. P. 19(a)(1)(B)(i).

Second, in light of Plaintiff's requested relief – a ***permanent injunction*** against the exploitation of Defendant's Song, Compl. ¶¶ 68-71, an accounting from every defendant, Compl. ¶¶ 57-60, and a constructive trust against every defendant, Compl. ¶¶65-67 – it would be highly prejudicial to the Publishing Defendants' rights were the Court to grant this relief to Plaintiff in their absence, making them indispensable parties as well. Fed. R. Civ. P. 19(b). The Complaint

seeks to, *inter alia,* permanently enjoin the exploitation of the Publishing Defendants' valuable intellectual property.

Accordingly, once the Publishing Defendants are dismissed for lack of jurisdiction, the Court, "in equity and good conscience" should dismiss the entire action pursuant to Fed. R. Civ. P. 12(b)(7). Fed. R. Civ. P. 19(b); Fed. R. Civ. P. 12(b)(7) (West 1992); *accord Stafford Trading, Inc. v. Lovely*, No. 05 C 4868, 2007 U.S. Dist. LEXIS 37140, at *35-37 (N.D. Ill. May 21, 2007) (party's ownership claim in copyright made him a necessary party under Rule 19(a) to declaratory claim); *American Elec. Power Serv. Corp. v. EC&C Techs., Inc.*, No. C-2-01-1021, 2002 U.S. Dist. LEXIS 21994, at *7-8, *25-26 (S.D. Ohio July 26, 2002) (granting motion to dismiss where patent holder was an indispensable party to patent infringement action and personal jurisdiction could not be obtained over it); *Cooper v. Digital Processing Sys., Inc.*, 182 F.R.D. 242 (N.D. Ohio 1998), *aff'd*, 215 F.3d 1342 (Fed. Cir. 1999) (granting motion to dismiss for failure to join an indispensable party where court did not have personal jurisdiction over patent licensee and licensee was indispensable to a full adjudication of the patent infringement action).

As the Publishing Defendants are not amenable to jurisdiction in this Court, the case against the remaining defendants too must be dismissed. Plaintiff may pursue his claims if he chooses to do so, but he must do so in a forum in which the all Defendants are amenable to the jurisdiction of the Court.[16]

---

[16] One possible such forum is the Southern District of New York.

## CONCLUSION

For all the reasons stated above, and because Plaintiff's Song and Defendants' Song share no copyrightable similarities, the Complaint should be dismissed with prejudice pursuant to Federal Rules of Civil Procedure 8 and 12(b)(6). In the event that any portion of the Complaint survives dismissal pursuant to Rule 12(b)(6), the Complaint should be dismissed as against the Publishing Defendants for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), and as a result, this case should be dismissed for failure to join indispensable parties pursuant to Fed. R. Civ. P. 12(b)(7).

Respectfully submitted,

/s/ Hara K. Jacobs
Hara K. Jacobs, Esq.
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Tel. (215) 665-8500
Fax. (215) 864-8999
jacobsh@ballardspahr.com

OF COUNSEL:

Brad D. Rose, Esq. (*pro hac vice* pending)
Ilene S. Farkas, Esq. (*pro hac vice* pending)
PRYOR CASHMAN LLP
7 Times Square
New York, NY 10036-6569
Tel. (212) 421-4100
Fax. (212) 326-0806
brose@pryorcashman.com
ifarkas@pryorcashman.com

*Attorneys for Defendants Cameron Jibril Thomaz, p/k/a Wiz Khalifa, Rostrum Records, LLC, Atlantic Recording Corporation, Warner Music Group Corp., WEA International Inc., 45th & 3rd Music, LLC, WB Music Corp., Warner/Chappell Music, Inc., and EMI April Music Inc.*

Dated: June 8, 2012

36